IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 6, 2018

## DEMETRIUS ANDERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 13-03327     James M. Lammey, Judge

_____

### No. W2017-01179-CCA-R3-PC
_____

The Petitioner, Demetrius Anderson, appeals from the denial of post-conviction relief, alleging he received ineffective assistance of counsel. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Ernest J. Beasley (on post-conviction appeal), Memphis, Tennessee, for the Petitioner, Demetrius Anderson.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ryan Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On March 23, 2013, the Petitioner robbed two men, Richard Cooper and Willie Crawford, at gunpoint and took $60 and some marijuana. The victims called the police, and the Petitioner was apprehended after a short foot chase. In July 2013, the Petitioner was indicted for aggravated robbery and criminal attempt to commit aggravated robbery. On September 4, 2013, the trial court ordered the Petitioner released under the supervision of the Day Reporting Center, which required the Petitioner to report, complete certain classes, and submit to drug screens. On November 15, 2013, the Petitioner was arraigned, appeared in criminal court with trial counsel, and his case was set for report on December 18, 2013. On January 22, 2014, the trial court entered a scheduling order, setting the Petitioner's case for trial on November 3, 2014, and providing in pertinent part, the following:

[The Petitioner] was voir dired in open court . . . concerning the nature of his/her charges, the possible ranges of punishment, any proposed settlements and any questions he/she may have concerning the legal process, and has been informed that . . . if he/she demands a trial that no plea-bargains will be accepted by the trial court once the case is set for trial. The [Petitioner] has in open court nevertheless rejected all offers of settlement and has demanded a trial by jury as is his/her right.

In May 2014, the trial court issued a capias for the Petitioner's arrest based on his failure to report as required to the Day Reporting Center. Two months later, on August 19, 2014, trial counsel filed a motion to withdraw as attorney of record based on the Petitioner's refusal to communicate with her or turn himself into the court following issuance of warrants for his arrest. Trial counsel's motion alleged that there was a total breakdown of communication with the Petitioner, that she was unable to effectively represent him, and that "continued representation would prejudice" the Petitioner. Trial counsel's motion acknowledged that the Petitioner's case had been set for trial. The trial court held the motion in abeyance until trial.

On November 3, 2014, the Petitioner's case was called on the calendar as set for trial. Apparently, the Petitioner appeared in court of his own volition. There was some discussion as to the capias issued for his arrest and trial counsel's motion to withdraw from the Petitioner's case. The clerk noted that the court had "issued the capias in May. [Trial counsel] filed her motion in August. We haven't seen [the Petitioner] since." The trial court addressed the Petitioner, "I'm glad you showed up . . . [s]ometimes people are their own worst enemies." The court further explained to the Petitioner that trial counsel had been trying to contact him. The clerk then advised the court that the Petitioner had picked up a criminal trespass charge in January 2014, which was apparently dismissed. The State announced that it was ready for trial but did not oppose a continuance.

Trial counsel requested a continuance because she had not seen the Petitioner for six months, but she advised the court that the Petitioner was considering entering a guilty plea that morning. Trial counsel acknowledged the trial court's scheduling order required the guilty plea to be open to the court. She further advised the court that the Petitioner "explain[ed] that he had to move twice because the family lost their homes and so that would be why [her] correspondence wasn't received, nor was fugitive able to contact him." She asked the court to hold the matter "temporarily ready" to discuss the Petitioner's options with him. The trial court obliged, resumed other court matters, and later accepted the Petitioner's request to enter a guilty plea.

The State provided the following factual basis in support of the guilty plea:

[O]n Saturday, March 23, 2013, at approximately 8:20 a.m., officers received a robbery of an individual call at Holmes and Mill Branch here in Memphis, Shelby County.

The victims, Richard Cooper and Willie Crawford, who are both present today, stated . . . that a male armed with a silver automatic robbed him at gunpoint of $60 cash.

When Crawford notified the police, he gave a detailed description of a male approximately six-one wearing a red shirt, black pants, and red and white baseball cap.

Mr. Cooper, the other victim, advised that when officers arrived on the scene, he observed officers in a foot chase behind the gun of the person that did in fact rob him at gunpoint.

After the defendant was apprehended where the victims were actually running alongside officers when they caught him, they immediately identified him as the person who just robbed at gunpoint. They said they had $60 cash stolen, $60 was found on his person along with a small [amount] of marijuana and Jimenez Arms .25 caliber semi [-] auto silver just like the victims described.

The trial court began by asking whether the Petitioner had ever entered a guilty plea before, and the Petitioner replied, "This is my first case ever, sir." The trial court read the Petitioner's rights to him, confirmed that he was waiving those rights, and ensured that the Petitioner's guilty plea was made knowingly and voluntarily. Asked if he wanted to continue with the plea, the Petitioner initially equivocated and stated that he "let time catch up" to him, that he was not prepared to go to trial, and that he did not maintain contact with trial counsel due to his financial situation. The Petitioner confirmed that he did not have any witnesses that he intended to testify in his defense. After the Petitioner inquired about the possible sentence he would be facing, the trial court stated that the Petitioner would be facing eight to twelve years and three to six years, respectively. The trial court clarified that it was possible to receive less time if he were found to be a mitigated offender, but that no sentencing determinations would be made until after the sentencing hearing. The Petitioner ultimately decided to plead guilty, reasoning doing so "might be [his] best outcome[.]" The trial court later imposed a concurrent term of nine and three years' imprisonment for each of the offenses.

On January 19, 2016, the Petitioner filed a pro se petition for post-conviction relief, which was amended following the appointment of counsel, alleging ineffective

assistance of counsel "at the guilty plea phase." Specifically, the Petitioner averred that trial counsel failed to explain the nature of the offenses to which the Petitioner was charged, failed to explain his rights pertaining to the guilty plea, and failed to adequately prepare for trial as evidenced by her August 19, 2014 motion to withdraw. As a result of trial counsel's deficiency, the Petitioner claimed his guilty plea was unknowingly and involuntarily entered.

At the April 13, 2017 post-conviction hearing, the Petitioner testified that he did not have an initial meeting with trial counsel to discuss his case and only met with trial counsel on court dates. He tried to call trial counsel multiple times a day and set up appointments with her but was unable to get in touch with her. He did not learn of the capias issued for his arrest until a few days before trial. He stated that he was under the influence of marijuana the morning of trial, but that he remembered everything about the hearing that day. He was under the impression that trial counsel was not prepared for trial because she told him he would "most likely get the maximum of the sentence" if he went to trial. He wanted to go to trial but eventually decided to plead guilty after trial counsel spoke with his grandmother and told her that the Petitioner "could receive a sentence of 7.2 and parole out in a year."

On cross-examination, the Petitioner testified that he recalled the trial judge discussing his rights, the waiver of those rights, and his potential eight to twelve year sentence but not the additional three to six year sentence. The Petitioner explained that he tried calling trial counsel "at least three times a day" to set up an appointment but was unable to do so. He said he stopped attempting to contact trial counsel after he stopped reporting to the Day Reporting Center in May 2014. He said he kept his same phone number and did not move during the time leading up to trial. He confirmed that he received the discovery package in January 2014.

On redirect examination, the Petitioner stated that, but for trial counsel's representation, he would not have entered a guilty plea. On voir dire by the court, the Petitioner confirmed that his guilty plea was not voluntarily entered.

Trial counsel testified that she filed a motion to withdraw as counsel of record for the Petitioner due to the Petitioner's refusal to communicate or cooperate with trial counsel, refusal to make payment toward representation, and refusal to turn himself into the court based on warrants for his arrest. She confirmed that the trial court held her motion in abeyance until the date of trial, but that it became moot after the Petitioner decided to plead guilty. She testified that she had no communications with the Petitioner after submitting her motion to withdraw. She explained that when she tried to talk with the Petitioner before filing the motion, "there was either no answer, no call back from him, no meetings at my office." She stated that, despite the lack of communication with

- 4 -

the Petitioner, she was prepared for trial and that she explained to the Petitioner the consequences of pleading guilty and the rights he was waiving.

On cross-examination, trial counsel testified that prior to filing her motion she discussed the Petitioner's options and the consequences of pleading guilty with the Petitioner and his family, and the Petitioner decided to go to trial as reflected in the scheduling order. She reviewed the State's discovery and determined success at trial was unlikely due to "the strength of the case." Pressed more about the proof in the case, trial counsel explained, "the defendant had met in some fashion with two men when walking to the store . . . and that he was attempting to purchase I think marijuana from [them]. They gave him marijuana but the marijuana wasn't of the quality that he wanted, and the defendant had a gun and used the gun to take back the money he had paid for the marijuana."

On the day of the guilty plea, trial counsel spoke with the Petitioner and explained his options of either pleading guilty or going to trial. She said the Petitioner understood the sentences he was facing. She observed that the Petitioner seemed fully aware of his surroundings, that he did not seem intoxicated or under the influence of marijuana, and that his plea was knowingly and voluntarily entered. She stated that, had the Petitioner wanted to go to trial that morning, she "would have been prepared to go." On voir dire by the court, trial counsel stated that she was surprised that the Petitioner showed up to court on the morning of trial because she had not been in contact with him for months. Significantly, the court noted and trial counsel agreed, that the Petitioner's offer from the State was the same as the sentence imposed by the trial court.

After the hearing, the post-conviction court stated in its ruling that the Petitioner appeared to be "lucid" during his guilty plea and that he understood the crimes to which he was pleading guilty. The court stated that the Petitioner had adequate time to withdraw his guilty plea if he so desired. The court accredited the testimony of trial counsel, found that trial counsel was not ineffective, and said that "she did everything in her power to prepare for trial." The court also found that there was no deficient performance and that, even if there were, there was no prejudice towards the Petitioner. In its June 7, 2017 order denying post-conviction relief, the court determined that the Petitioner failed to carry his burden of proof as to either deficient performance or prejudice. It is from this order that the Petitioner now appeals.

## ANALYSIS

The Petitioner argues that trial counsel was ineffective in failing to effectively communicate with the Petitioner prior to trial and failing to properly explain the Petitioner's options and consequences of pleading guilty. The Petitioner further asserts

that he was under the influence of marijuana when he entered his guilty plea. The State contends, and we agree, that the post-conviction court properly denied relief.

In reaching our conclusion, we are guided by the following well-established law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293–94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

We note that the validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242–44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently

entered, then the defendant has been denied due process, and the guilty plea is void.  Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'"  Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242–43).  In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

The Petitioner's argument in this appeal, which is no more than a paragraph, is that the post-conviction court erred in concluding that the Petitioner received effective assistance of counsel based on trial counsel's "breakdown of communication with [the Petitioner]."  He further claims that his guilty plea was involuntarily and unknowingly entered because he smoked marijuana that morning.  The record shows that the "breakdown in communication" was not attributable to trial counsel, but rather, the Petitioner's refusal to meet with her.  The Petitioner was released on bond in September 2013, and met with trial counsel sufficiently enough to set his case for trial in January 2014.  Based on the trial court's January order, the Petitioner was advised of his charges, the potential range of punishment, and the legal process prior to setting his case for trial. Trial counsel made efforts to contact the Petitioner after his case was set for trial; however, they were unsuccessful.  When the Petitioner showed up for court on the day of

trial, the trial court advised the Petitioner, consistent with its prior order, that he had the option to enter a guilty plea to the court or proceed with a trial. In discussing whether the Petitioner desired a trial, the trial court determined that there were no witnesses the Petitioner intended to call. Trial counsel was ready for trial, but the Petitioner chose to enter a guilty plea as his best outcome. Our review of the guilty plea colloquy shows that the Petitioner was fully aware of the consequences of entering his guilty plea, despite his claim of being inhibited by marijuana. Based on this record, the Petitioner has failed to establish deficient performance or prejudice as a result of trial counsel's inability to communicate with him. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

- 8 -